# HEARING OFFICER'S DECISION

Social Security: xxx-xx-7936
Docket Number: 34973-2024
BYB Date: 5/12/2024
Dep Decision: 8/21/2024
Date of Appeal: 12/13/2024
Appellant: Employer
Employer No: 979934005

Colorado Department of Labor and Employment
Division of Unemployment Insurance, Appeals Branch
P.O. Box 8988, Denver, CO 80201-8988
303-318-9299 or 1-800-405-2338 Fax: 303-318-9248

**DATE MAILED: April 4, 2025**

JEFFREY BARLOW
JEFFREY BARLOW
2131 LAWRENCE ST APT 533
DENVER CO 80205-2896

KNEW CONSCIOUS COLLECTIVE INC
KNEW CONSCIOUS COLLECTIVE INC
NO CONTACT NAME GIVEN
1153 PORTLAND PL APT 2
BOULDER CO 80304-8220

---

**STATEMENT OF CASE:** Jeffrey Barlow, the claimant, appeared for this hearing and was represented by Emanuel Kataev. Appearing as a witness on behalf of the division was Deputy Anthony. Knew Conscious Collective Inc, the employer, appeared for this hearing and was represented by Greg Creer. Appearing as witnesses on behalf of the employer were Leah Hagemann and Jason Swab. There were no other appearances for this hearing. The hearing was held on February 25, 2025 and completed on March 19, 2025, telephonically, before Hearing Officer Musselman.

The hearing officer entered one claimant exhibit into evidence. The hearing officer entered one Division exhibit into evidence. The hearing officer entered one employer exhibit into evidence.

The hearing officer held the hearing because the [employer/claimant] appealed a decision issued by a deputy of the Division of Unemployment Insurance. The deputy determined that the claimant was an employee of this employer because they were not free from control and direction in the performance of the service, and not necessarily engaged in an independent trade, occupation, profession, or business related to the service, under Section 8-70-115, C.R.S. The hearing officer must now establish, under Colorado law, whether the services performed are covered by the Colorado Employment Security Act. The hearing officer affirms the deputy's decision based on the findings and conclusion stated below.

The hearing officer held the hearing because the Division found that there was presumptive good cause for the appellant's failure to appear and late appeal pursuant to Regulation 12.1.3. The hearing officer must determine whether the appellant has shown good cause for the failure to appear and the late appeal pursuant to Regulation 12.1.8. The hearing officer determined that the employer has shown good cause for the failure to appear and late appeal.

**FINDINGS OF FACT:**

BACKGROUND

The claimant filed for benefits on May 9, 2024, with an effective date of May 12, 2024. The claimant did not have enough wages for his claim, so the Division requested proof of wages. The claimant submitted wage information claiming wages from the employer. The claimant also submitted a W2, which he himself created and did not have the authorization to create. The Division requested further information to determine if the claimant was an employee or independent contractor. After receiving the parties' responses, the Division issued a decision on August 21,

2024, finding that the claimant was an employee. The putative employer appealed that decision.

Leah Hagemann and Kurt Redeker partially owned Knew Conscious Collective Inc. ("KCC"), a social club that held various performances twice weekly. It first opened on August 16, 2021, and has since closed. Both Ms. Hagemann and Mr. Redeker supervised the claimant.

THE CLAIMANT'S PUTATIVE EMPLOYMENT

The claimant was hired as a W2 employee in August 2021 as a door person, earning $18 an hour, which was later increased to $20 an hour. The claimant was responsible for taking tickets for events. In December 2021, the claimant became the venue manager and was paid W2 wages, earning $25 an hour. One of the claimant's responsibilities was to produce a profit and loss statement for each show, which was due on Monday. In January 2023, KCC converted all of its employees, including the claimant, to 1099 contractors to save money. The claimant had similar responsibilities after the change, but they added other responsibilities. The claimant was still responsible for producing the P&Ls. There was no written agreement concerning the claimant's job with KCC.

The claimant was also responsible for day-to-day business operations; he would help with the hiring process; and would have around four weekly video meetings with the two owners. During those meetings, they would talk about business development, marketing, booking artists, and improvements. The claimant was also responsible for website updates. He would also pay workers and artists with company funds. The claimant was also responsible for contract review and approval for artists. The claimant was responsible for supervising the bar manager and bar supplies. The claimant was also responsible for meeting with contractors for building repairs. He would also help with social media posts to drive business. The claimant also met with the owners to assess and help control debt issues.

The claimant was not required to work exclusively for KCC and could have worked for other companies; however, the claimant worked full-time hours and would not have had time to work for other companies.

KCC instructed the claimant on when the P&Ls would be turned in. The claimant would have multiple weekly meetings with the owners concerning the operation of the company, but he had freedom in how tasks were carried out.

The claimant was originally paid $25 an hour. The claimant was sometimes working significant overtime. In order to help KCC, he came to an agreement with the owners to be paid $2500 biweekly.

Either the claimant or KCC could have terminated the claimant's job at any time.

KCC provided around four months of training for the claimant to become the venue manager from Josh Norman, the prior venue manager, and then additional training from Jason Swab.

Ms. Hegemann purchased a laptop for the claimant. KCC also provided ink and stamps, as well as tools such as hammers, power drills, and ladders. They also provided ticket scanners, printers, scanners, apps, and program subscriptions to operate marketing and ticketing systems. The claimant did initially provide his own laptop and used some of his own equipment. The claimant was also authorized to make purchases for which KCC later reimbursed him.

The claimant was required to be onsite during the two shows a week. The claimant could dictate his own schedule at other times.

KCC paid the claimant personally as the claimant did not have an independent business. However, the checks included a note stating they were for 1099 contractor work. The claimant did work as a musician and DJ, and he performed as such at KCC on two occasions, but the claimant did not work as a venue manager for others.

The claimant did not have his own business listings or address. The claimant did not have personal business cards, but KCC provided him with business cards that listed KCC's information. The claimant did not have a business telephone number.

The claimant did not have any investment in KCC and did not combine business operations with KCC.

KCC initially set the price for the performance of the work at $25 an hour, which was later agreed to be $2500.

The claimant did not employ others to complete the work.

The claimant did not carry liability insurance, but KCC did.

KCC dictated that the claimant would be converted from a W2 employee to an independent contractor. Thereafter, the claimant referred to himself as an independent contractor.

GOOD CAUSE FACTS

The Division issued a decision on August 19, 2024, but did not mail it. The Division then issued a redetermination on August 26, 2024, for which any appeal was due by September 16, 2024. The redetermination did not have the employer's mailing address printed on it. The employer appealed the redetermination on November 7, 2024, three weeks late. The original hearing in this matter was scheduled for December 2, 2024, at 10 am. The employer failed to check in for the hearing and it was dismissed. The Division then mailed the dismissal notice to the employer on December 1, 2024. The employer had 20 days to appeal that notice. The employer timely appealed on December 13, 2024. The employer closed the business and vacated the building on April 25, 2024.

The employer was inundated with notices from the Division and other mail dealing with the closure. Ms. Leah Hageman spoke with a Division representative around May 29, 2024, and was told she did not need to worry about issues from the claimant because he was a 1099 contractor. The employer was confused by further notices after that and contacted her counsel. The employer called the Division many times to understand the various notices she received and her duties for each. The employer appealed late and failed to appear for the above reasons.

**CONCLUSIONS OF LAW:** Regulation Concerning Employment Security 12.1.8 provides that in determining whether good cause has been shown for permitting an untimely action or excusing the failure to act as required, the division or the panel consider:

1. Whether the party acted in the manner that a reasonably prudent individual would have acted under the same or similar circumstances;

2. Whether there was administrative error by the division;

3. Whether the party exercised control over the untimely action, except that the acts and omissions of a party's authorized representative are considered the acts and omissions of the party and are not considered to be a factor outside the party's control as intended by this rule;

4. The length of time the action was untimely;

5. Whether any other interested party has been prejudiced by the failure to act or untimely action, "prejudiced," as used in this section, means that an interested party will be prevented from presenting or substantially hindered from presenting probative evidence in support of the interested party's position or in the ability to refute the position of the opposing party; and

6. Whether denying good cause would lead to a result that is inconsistent with the law.

7. Good cause cannot be established to accept or permit an untimely action or to excuse the failure to act, as required, that was caused by the party's failure to keep the division directly and promptly informed by a written, signed statement of their current and correct mailing address in

Case No. 1:26-cv-00375-SKC-SBP Document 17-2 filed 10/30/24 USDC Colorado
pg 4 of 9



person, by mail, by facsimile machine, or by other division-approved electronic means. This provision shall not apply if the party establishes that they reasonably believed that the division would not have any need for their new address under the circumstances.

8. A written decision concerning the existence of good cause need not contain findings of fact on every relevant factor, but the basis for the decision must be apparent from the order.

9. Unless otherwise provided by law, no act subject to this section shall be permitted more than 180 days beyond the applicable timely date.

Regulations Concerning Employment Security 11.2.13.1, provides that in the event the appealing party fails to participate in the hearing as directed, the appeal shall be dismissed, and the decision that was the subject of the appeal shall become final, unless the party establishes good cause for the failure to participate in the hearing as directed.

The hearing officer concluded that the employer presented good cause for failing to appear and for the late appeal. The hearing officer considered that there was administrative error by the Division on May 29, 2024, when the employer was given confusing instructions regarding these cases. The hearing officer considered that the claimant was not prejudiced by the failure to appear for late appeal. The hearing officer considered that denying good cause would lead to a result inconsistent with the law to allow the parties, employer included, due process and a fair hearing. The hearing officer concluded that the employer presented good cause for the failure to appear and late appeal.

The Colorado Employment Security Act Section 8-70-115(1)(b), C.R.S. provides that services performed by one worker for another shall be deemed to be employment unless the company shows that (1) the worker is free from control and direction in the performance of the services; and that (2) the worker is customarily engaged in an independent trade, occupation, profession, or business related to the service performed. The statute places the burden of proof on the company to show that both conditions exist in order to rebut the presumption of an employment relationship between the parties. *See Industrial Claim Appeals Office v. Softrock Geological Services, Inc.*, 325 P.3d 560 (Colo. 2014).

If the company fails to show either of the two conditions, an employment relationship exists. The totality of the circumstances must be considered to determine the nature of the work and the relationship between the company and the worker in determining whether a worker is free from control and direction and whether a worker is customarily engaged in an independent trade, occupation or business related to the service performed. Id. In determining whether a worker is free from control and direction and whether a worker is customarily engaged in an independent trade, occupation or business related to the service performed those factors described in Section 8-70-115(1)(c)(I)-(IX), C.R.S should be considered. All other relevant factors to the nature of the work and the relationship between the company and the worker may be considered including but not limited to, whether the worker

(1) provided this same type of service to others while providing such services to this company;

(2) had a business listing, address, cards, or telephone number;

(3) had a financial investment such that there was a risk of suffering a loss;

(4) used his or her own equipment;

(5) set the price for performing the work;

(6) employed others to complete the work; and

(7) whether he or she carried liability insurance. *See Long View Systems Corp. v. Industrial Claim Appeals Office*, 197 P.3d 295 (Colo. App. 2008).

Any other factors relevant to the nature of the work and the relationship between the worker and the company will also be considered. The worker must be free from the control and direction of the company in the performance of the service, both under the terms of any contract and in fact. Control and direction is general control and direction over the means and methods of performing the work. *See Carpet Exchange of Denver Inc. v. Industrial Claim Appeals Office*, 859 P.2d 278 (Colo. App. 1993). The degree of control or direction exercised by the company over the performance of the services, or over the worker performing the services, shall not be considered if exercised solely pursuant to requirements of any state or federal statute or regulation.

Sections 8-70-115(1)(c) and (2), C.R.S. provide that there shall be a rebuttable presumption of an independent contractor relationship if(1) the elements listed below are demonstrated in a written document, signed by both parties, and (2) the written document also contains a disclosure, in type which is larger than other provisions in the document or in bold faced or underlined type, that the worker is not entitled to unemployment insurance benefits unless unemployment compensation coverage is provided by the worker or some other entity, and that the worker is obligated to pay Federal and State income tax on any monies paid pursuant to the contract relationship. Pursuant to Section 8-70-115(1)(c)(I)-(IX), C.R.S., the document must show the company did not:

I. Require the worker to work exclusively for the person for whom services are performed; except that the worker may choose to work exclusively for that person for a finite period of time specified in the document;

II. Establish a quality standard for the worker; except that such person can provide plans and specifications regarding the work but cannot oversee the actual work or instruct the worker as to how the work will be performed;

III. Pay a salary or hourly rate but rather a fixed or contract rate;

IV. Terminate the work during the contract period unless the worker violates the terms of the contract or fails to produce results that meet the specifications of the contract;

V. Provide more than minimal training for the worker;

VI. Provide tools or benefits to the worker; except that materials and equipment may be supplied;

VII. Dictate the time of performance; except the completion schedule and range of mutually agreeable work hours may be established;

VIII. Pay the worker personally instead of making checks payable to the trade or business name of the worker; and

IX. Combine the company's s business operations in any way with the worker's business, but instead maintained such operations as separate and distinct.

Even if the company has a contract that meets the above requirements and a rebuttable presumption is created, a determination must still be made whether the worker is free from control and direction in practice. The presumption can be rebutted by taking into account the dynamics of the relationship and the totality of the circumstances.

**Direction and Control**

The worker must be free from the control and direction of the putative employer in the performance of the service, both under any contract and in fact. The hearing officer must consider the means and methods of performing the work. The degree of control exercised by the putative employer over the performance of the services or the worker performing the services shall not be considered if exercised under any state or federal statute or regulation requirements. Section 8-70-115(1)(b) C.R.S.

Here, the claimant was not free from direction and control. The hearing officer considered the means and method of the work. The hearing officer considered that the claimant had significant freedom in how he carried out tasks. However, the hearing officer considered that the claimant was a large part of the business operation. The hearing officer considered that the claimant had the same role as a W2 employee, but he was later converted along with all the other employees. The hearing officer considered that the claimant met regularly with the owners to discuss the business and its operation. The hearing officer determined that the claimant was not free from direction and control.

**Customary Engagement in an Independent Business**

To determine whether a worker is customarily engaged in an independent business, the hearing officer must apply "a totality of the circumstances test that evaluates the dynamics of the relationship between the putative employee and the employer; there are no dispositive single factor or set of factors." *Industrial Claim Appeals Office v. Softrock Geological Services, Inc.*, 325 P.3d 560, 566 (Colo. 2014).

Whether the worker provides this same type of service to other companies while providing such services to the putative employer is relevant but not dispositive of the issue of whether the worker was customarily engaged in an independent trade. *Id.* at 565.

The hearing officer should also consider the statutory factors under Section 8-70-115(1)(c)(I)-(IX), C.R.S., which are listed below. *Id.*

The hearing officer concludes that Vanderheiden was customarily engaged in an independent business. In making this determination, the hearing officer considered the totality of the circumstances and the dynamics of the relationship and did not rely on a single factor as dispositive in the conclusions.

The hearing officer considered the factors under Section 8-70-115(1)(c)(I)-(IX), C.R.S.

Factor I falls in favor of employee status. The claimant worked significant hours and could not have had worked for other companies. Factor II falls in favor of employee status. The claimant met with the owners on a regular basis about the business and business operations. KCC instructed the claimant to have the P&Ls done by Monday of each week. Factor III falls in favor of an independent contractor status. There was an agreement between the parties that the claimant would be paid a flat rate of $2,500 biweekly. Factor IV falls in favor of employee status. The claimant or KCC could terminate the relationship at any time. Factor V falls in favor of employee status. KCC provided signification training to the claimant for four months to become a venue manager. Factor VI does not fall in favor of one or the other. The claimant had some of his own equipment, including a laptop, which was later replaced. KCC did provide materials essential for business operations. Factor VII falls in slight favor of employee status. KCC set the schedule for the shows and the time for the P&Ls. The claimant did set his own schedule outside of showtimes. Factor VIII falls in favor of employee status. The checks were noted as 1099 contractor pay, but they were made to the claimant personally, as he did not own a business. Factor IX falls in favor of employee status. The claimant did not have any similar business. The claimant did have a band and was a DJ.

Seven factors fall in favor of employee status, one in favor of contractor status, and one does not fall either way. A consideration of the statutory factors clearly shows that the claimant was an employee.

Case No. 1:26-cv-00375-SKC-SBP Document 17-2 filed 10/30/26 USDC Colorado
pg 7 of 9



In addition to the factors listed under Section 8-70-115(1)(c)(I)-(IX), C.R.S., the hearing officer should consider any other factors relevant to the nature of the work and the relationship between the putative employer and the worker. These factors may include, but are not limited to, whether the worker (1) had a business listing, address, cards, or telephone number; (2) had a financial investment such that there was a risk of suffering a loss; (3) used his or her own equipment; (4) set the price for performing the work; (5) employed others to complete the work; and (6) whether he or she carried liability insurance. *Id. Long View Systems Corp. v. Industrial Claim Appeals Office*, 197 P.3d 295, 300 (Colo. App. 2008). Any other factors relevant to the nature of the working relationship may also be considered, such as the intent of the parties. *Softrock*, at 565.

The *Long View* factors fall in favor of employee status. The claimant did not own a similar business, and he did not have listings, an address, cards, or a business telephone number. The claimant had no financial investment in KCC. The claimant used some of his own equipment and also used KCC's equipment. KCC initially set the price, and then the parties agreed upon another $2,500, but the claimant had similar responsibilities during his time as a venue manager. The claimant did not employ others and did not carry liability insurance. The hearing officer also considered that the claimant was significantly involved in the day-to-day business operations, unlike an independent contractor. The hearing officer also considered that the claimant manufactured his W2 and that was not an authorized W2 from the employer. Regardless, the hearing officer notes that a W2 is not dispositive of whether a worker is an independent contractor for the purposes of UI.

Considering the totality of the circumstances, the dynamics of the relationship, and any other relevant factors, the hearing officer concludes that the claimant was not customarily engaged in an independent trade while performing services for the putative employer.

**DECISION:** The hearing officer determines that the claimant is covered under the Colorado Employment Security Act under Section 8-70-115, C.R.S. This decision is sent back to the Division to charge the employer's account. If the employer does not have an account, the Division will decide if the wages can be credited to the claimant based on whether the employer has met the requirements of section 8-70-113 of the Colorado Revised Statutes.

The hearing officer affirms the deputy's decision.

El intermediario de audiencias afirmó la decisión.Para una explicación del resultado de esta decisión favor de contactarse al 303-318-9299.

The hearing officer determined that the employer has shown good cause for the failure to appear and late appeal.

***Attention: This decision is final unless you appeal it within 20 calendar days from the date this decision was mailed, as instructed below.*** If this decision disqualifies you from receiving unemployment insurance benefits, you will not receive any unemployment benefits based on wages paid by this employer on this or any future claim. However, you might receive one week of benefits if this employer is your only base period employer. If this is not your only base period employer, decisions on separations from any other base period employers will affect the amount of benefits, if any, that are available to you.

If this decision disqualifies you from receiving benefits from your last employer before filing the initial or additional claim in this benefit year, you will not be paid any benefits you might be entitled to from any other employers until 10 weeks after the date of filing the initial or additional claim.

If this decision reverses a previous award of benefits, you may be liable to repay those benefits.

Si esta decisión revoca fallos previos de beneficios, usted podría ser responsable de reembolsar esos beneficios.

Hearing Officer MUSSELMAN

Appeals Hearing Officer

**IMPORTANT:** This document(s) contains important information about your unemployment compensation rights, responsibilities and/or benefits. It is critical that you understand the information in this document. If needed, call (303) 318-9299; 1-800-405-2338 for assistance in the translation and understanding of the information in the document(s) you have received.

If this decision reverses a previous award of benefits, you may be liable to repay those benefits. If you have not continued to request payment on MyUI+, your claim has shut down. You must call the Customer Call Center at 303-318-9000 or 303-536-5615 to reopen your claim.

**¡IMPORTANTE!** Este documento(s) contiene información importante sobre sus derechos, obligaciones y/o beneficios de compensación por desempleo. Es muy importante que usted entienda la información contenida en este documento. Si necesita asistencia para traducir y entender la información contenida en el documento(s) que recibió, llame al 303-318-9333; 1-866-422-0402.

## APPEAL RIGHTS

An interested party may appeal this decision. The written appeal must be received by the Industrial Claim Appeals Office (ICAO) ***within 20 calendar days*** from the date the decision was mailed. If the 20th calendar day falls on a Saturday, Sunday or legal holiday, the due date is the next business day. Appeals will be accepted after 20 calendar days only if good cause is shown for the late appeal. If a timely appeal is filed, each interested party will receive an *audio copy* of the recorded hearing testimony at no cost. Parties requesting a *written transcript* for the appeal must submit payment for the approximate cost of the transcript or a completed waiver request form with the appeal. The approximate cost of the transcript of this hearing is $552.25. The waiver form is available at https://cdle.colorado.gov/faqs.

If you wish to request a new hearing *because you failed to participate in the hearing*, you may submit a written request for a new hearing. Your written request must be received by the ICAO within twenty (20) calendar days from the date this decision was mailed in order to be considered timely. If you fail to appear for the new hearing, no additional hearings will be granted and the appealed decision will become final.

If you appeal late or are requesting a new hearing because you did not participate in the original hearing, you must include, in your appeal, a detailed explanation of why you appealed late or did not attend the original hearing. If you do not include such a statement, the panel may request such a statement and may require you to respond within 10 calendar days.

You can file your appeal and/or new hearing request to ICAO at https://cdle.colorado.gov/appeal-a-hearing-officers-decision. You can also mail, email, or fax your appeal. ICAO, Mailing Address: PO Box 18291, Denver, Colorado 80218-0291. Phone: (303) 318-8133, Fax: (303) 318-8139, e-mail: cdle_icao@state.co.us.

## DERECHOS DE APELACION

La parte interesada puede apelar a esta decisión. La apelación escrita deberá de ser recibida por la Oficina Industria de Apelaciones de Reclamo (ICAO) (por sus en siglas en Ingles) Dentro de 20 días del calendario a partir de la fecha en que la decisión fue mandada por correo. Si el día 20 del calendario queda en sábado, domingo o en un día feriado legal, la fecha limite será el siguiente día activo de trabajo. Apelaciones serán aceptadas después de 20 días del calendario solo si se demuestra una causa justificada por la apelación tardía.

Si una apelación es sometida a tiempo, cada parte interesada recibirá una copia audio de la grabación del testimonio, sin costo. Las partes que soliciten un transcripto deberán someter el pago por el costo aproximado del transcripto o llenar una forma de petición de excepción de pago junto con su apelación. El costo aproximado del trascripto de esta audiencia es $552.25. La forma de excepción esta disponible en at https://cdle.colorado.gov/faqs.

Case No. 1:26-cv-00375-SKC-SBP Document 17-2 filed 10/30/26 USDC Colorado
pg 9 of 9



Si usted desea solicitar una nueva audiencia debido a que fallo en presentarse en la audiencia, usted puede someter una forma escrita para solicitar una nueva audiencia. Su solicitud escrita deberá ser recibida por la Oficina Industria de Apelaciones de Reclamo (ICAO) (por sus en siglas en Ingles) Dentro de 20 días del calendario a partir de la fecha en que la decisión fue mandada por correo para que pueda ser considerada puntual.

Si usted falla en aparecer para la nueva audiencia, no se le otorgada alguna otra audiencia. Y la decisión apelada será irrevocable. Si usted esta apelando fuera de tiempo, o solicitando una nueva audiencia debido a que no participo en la audiencia original. Usted deberá de incluir en su apelación. Una explicación detallada del porque está apelando tarde, o porque no asistió a la audiencia original. Si usted no incluye esta declaración, el panel podría requerir esta declaración y podría requerir que usted responda dentro de 10 días del calendario.

Someta las apelaciones y solicitudes directamente a la Oficina Industria de Apelaciones de Reclamo (ICAO) (por sus en siglas en Ingles). usted también podría enviar un correo electrónico o mandar su apelación vía fax. Formas de solicitud para una nueva audiencia están disponibles en https://cdle.colorado.gov/appeal-a-hearing-officers-decision. Por favor solo elija un método para someter su solicitud. El número telefónico para la Oficina Industria de Apelaciones de Reclamo (ICAO) (por sus en siglas en Ingles) es: (303) 318-8133, fax (303) 318-8139, correo electrónico. cdle_icao@state.co.us.

Mailed, postage prepaid, to the parties named herein this 4th day of April, 2025.

INTERESTED PARTIES

---

**CCs:**

---

DIVISION OF UNEMPLOYMENT INSURANCE
REDETERMINATION UNIT
REDETERMINATION UNIT
251 EAST 12TH AVE
DENVER, CO 80203-2202

KNEW CONSCIOUS COLLECTIVE INC
1153 PORTLAND PL APT 2
BOULDER, CO 80304-8220

Please take a short survey to tell us about your experience with CDLE at www.colorado.gov/uisurvey.